UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-50960 |
| | * | |
| 18 AUDUBON PLACE, LLC | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | JUDGE ROBERT SUMMERHAYS |
| * * * * * * * * | | |

## MOTION TO (A) IMMEDIATELY EVICT OCCUPIER FROM COLLATERAL, AND (B) AUTHORIZE EXPEDITED SECTION 363 SALES PROCESS, OR, IN THE ALTERNATIVE, TO APPOINT A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104, OR IN THE ALTERNATIVE TO TERMINATE EXCLUSIVITY PERIOD PURSUANT TO 11 U.S.C. § 1121(D)

SBN V FNBC LLC ("SBN"), the largest creditor of 18 Audubon Place, LLC (Debtor") respectfully moves this Court for the entry of an order A) immediately evicting the persons improperly occupying its collateral; and B) to authorize an expedited Section 363 sales process, or, in the alternative, for an order appointing a Chapter 11 trustee pursuant to 11 U.S.C. § 1104, or, alternatively, termination of the period of exclusivity provided by 11 U.S.C. § 1121(b) for a debtor to file a plan of reorganization. As evidenced by the incredible facts set forth herein, this bankruptcy filing is the latest in a series of truly egregious actions by the Debtor and its principal to perpetuate the principal's continued years long free occupation of one of the most expensive homes in Louisiana.

### I. JURISDICTION

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334. The relief sought herein is governed by 11 U.S.C. §§ 105, 1112, and 1121.

2.

This matter is a core proceeding pursuant to 28 U.S.C. § 157.

**II. F<small>ACTUAL</small> B<small>ACKGROUND AND</small> P<small>ROCEDURAL</small> H<small>ISTORY</small>**

3.

18 Audubon Place, LLC ("Debtor") filed this case on August 1, 2018 ("Petition Date"). Debtor remains in possession and no trustee has been appointed in this case.

4.

As set forth in its schedules, the Debtor's only asset is a home located at 18 Audubon Place, New Orleans, LA (the "Home").

5.

The Home is located on the exclusive gated street known as Audubon Place in uptown New Orleans directly adjacent to Tulane University. The Audubon Place homes are among the most expensive parcels of real estate within both the City of New Orleans and the State of Louisiana.

6.

As of August 1, 2018, the Debtor owed SBN the following amounts:

| | |
|---|---|
| $4,416,044.48 | Principal |
| $1,011,552.82 | Interest, accrued since 1/10/18 at 21%, or $2,576.03 per day |
| $6,000.00 | Late charges |
| $12,123.26 | Insurance- force placed |
| $12,534.86 | Legal fees |
| $89.43 | Postage |
| $5,458,344.85 | Total |

Debtor's indebtedness is evidenced by, *inter alia*, that certain promissory note, dated May 15, 2015, originally executed by the Debtor in favor of First NBC Bank ("FNBC") in the original principal amount of $4,420,000.00 (the "Note").

7.

To secure the indebtedness evidenced by the Note, the Debtor granted FNBC a Multiple Indebtedness Mortgage on the Home, dated May 31, 2012.

8.

The Debtor's last payment on the Note was made two years ago, on August 24, 2016. The Debtor has failed to make any payments since this date and has not paid real estate taxes on the Home.

**A. Debtor filed this Chapter 11 proceeding to prevent the foreclosure of the Home, in which Debtor's principal, owner, and member has been living, apparently rent free, for years.**

9.

On October 11, 2016, FNBC filed a Petition for Foreclosure Via Executory Process with Appraisement in the Civil District Court for the Parish of Orleans, State of Louisiana (the "State Court"), commencing case no. 16-10114 ("Foreclosure Proceeding"). By Order entered on October 11, 2016, the State Court ordered the Orleans Parish Sheriff to seize and sell the Home ("State Court Seizure Order").[1]

---

[1] The Order dated October 11, 2016, the writ of seizure and sale and the recorded notice of seizure are collectively attached hereto as ***Exhibit A***.

3

10.

On April 28, 2017, FNBC was closed, and the Federal Deposit Insurance Corporation ("FDIC") was confirmed as receiver and vested with title and ownership of FNBC's assets.[2]

11.

Effective October 18, 2017, FDIC, as receiver of FNBC, assigned the Note, Mortgage and related documents to SBN. On January 12, 2018, SBN filed a Supplemental and Amending Petition for Executory Process to substitute into the foreclosure as the proper plaintiff, and to continue the foreclosure on the Home.

12.

The Debtor thereafter undertook various steps to delay the foreclosure of the Home, including the filing of a petition for injunctive relief, followed thereafter by the filing of a motion for preliminary injunction to delay the foreclosure of the Home. The Debtor's requests to enjoin the foreclosure were withdrawn or dismissed shortly before Debtor filed the instant bankruptcy proceeding.

13.

According to Schedule G, the Debtor "leases" the Home to Richard Goldenberg, Debtor's principal, for $25,000.00 per month.[3] Richard Goldenberg is listed as the 98% owner of the Debtor (the other 2% is owned by Robert Goldenberg) and as its manager.[4] Schedule G does not provide the length of the remaining term of this alleged lease.

---

[2]     Order dated April 28, 2017 entered by the State Court in *In the Matter of First NBC Bank,* case no. 17-4057.
[3]     Schedule G: Executory Contracts and Unexpired Leases [Doc. 1], at 17.
[4]     *See* Statement of Financial Affairs [Doc. 1], at 30.  Richard Goldenberg signed the schedules as the member/manager.

4

14.

Debtor's Schedule A/B provides that the Debtor is owed $1,200,000.00 on the Lease, $600,000.00 of which it claims is "doubtful or uncollectible."[5] Based upon this assertion, and the monthly rental amount of $25,000.00, **the Debtor has allowed Mr. Goldenberg to continue to live in the Home without paying rent *for 4 years*.** Debtor has, of course, taken no steps to evict Mr. Goldenberg for nonpayment, because Mr. Goldenberg owns/controls the Debtor. In fact, incredibly, despite this history of nonpayment, the day before the Debtor filed bankruptcy the Debtor purported to record a "Lease" dated July 23, 2018 under which the Debtor purported to lease Goldenberg the Home through December 31, 2019.[6] While the Lease is unenforceable for several reasons as explained herein, the Lease reflects the desperate lengths to which the Debtor will go to allow Goldenberg to continue his wrongful occupation of the Home.

15.

The Debtor owes the Audubon Place Commission $22,000 for home owner dues, and the City of New Orleans $65,600 for real estate taxes.[7] In fact, the Home was sold at tax sale on May 9, 2018.[8] Meanwhile, the Debtor has not paid a penny on SBN's indebtedness since August of 2016.

**B. Mr. Goldenberg's rent-free occupation of the Home stretches back to 2009, and Mr. Goldenberg 2010 personal bankruptcy proceeding was recently dismissed, with prejudice, for cause.**

16.

On July 28, 2010, Richard A. Goldenberg filed Chapter 11 bankruptcy in the United

---

[5]  Schedule A/B [Doc. 1], at 9.
[6]  A certified copy of this "Lease" is attached hereto as ***Exhibit B***.
[7]  Schedule D [Doc. 1], at 13; Schedule E/F [Doc. 1], at 15.
[8]  A certified copy of the Tax Sale Certificate filed in the conveyance records of Orleans Parish at no. 2018-22309 is attached hereto as ***Exhibit C***.

States Bankruptcy Court for the Eastern District of Louisiana in case no. 10-12728 (the "Goldenberg Bankruptcy").

17.

In Mr. Goldenberg's September 9, 2010, amended schedules, he listed the Home as his personal asset with a value of $4,800,000.00, but subject to a secured claim of $4,490,243.00.[9]

18.

Similar to this proceeding, the Goldenberg Bankruptcy was filed on July 28, 2010, the day before the Home was scheduled for foreclosure sale on July 29, 2010.

19.

On August 13, 2010, Whitney National Bank ("Whitney"), as the holder of the indebtedness secured by a mortgage on the Home, filed a Motion to Lift Stay [Doc. 9 in the Goldenberg Bankruptcy]. Whitney stated that no payment had been made on the indebtedness since August of 2009, real estate taxes in excess of $260,000 were owed on the Home, and property insurance had not been maintained.

20.

On October 6, 2010, Whitney and Goldenberg reached an agreed Order [Doc. 112 in the Goldenberg Bankruptcy] on the Motion to Lift Stay, which provided, among other things, (1) that the stay would be lifted to allow a foreclosure sale to occur *after* December 16, 2010, but also (2) that Whitney would agree to assign the indebtedness secured by the Home to a person designated by the Debtor in exchange for a cash payment *prior* to December 10, 2010. As set forth below, the Home was ultimately transferred by Mr. Goldenberg to Debtor.

---

[9]     *See* Schedule A [Doc. 73] in the Goldenberg Bankruptcy.

21.

Mr. Goldenberg filed numerous plans and disclosure statements in the Goldenberg Bankruptcy which met with numerous objections. Ultimately, on July 22, 2011, Goldenberg filed the Fifth Amended Plan of Reorganization (Final) [Doc. 435 in Goldenberg Bankruptcy] ("Plan"). The accompanying Disclosure Statement [Doc. 397 in Goldenberg Bankruptcy] ("Disclosure Statement") explained that the Whitney indebtedness secured by the Home had been purchased by 18 Audubon Place, LLC, Debtor herein. *See id.* at pp. 16-17.

22.

The Plan provided that on or before August 31, 2011,[10] Goldenberg would transfer the Home to Debtor to satisfy Mr. Goldenberg's indebtedness. The Orleans Parish real estate records reflect that by Act of Transfer by Richard A. Goldenberg to 18 Audubon Place LLC dated May 31, 2012, Goldenberg transferred the Home to the Debtor.[11]

23.

Goldenberg acquired the Debtor, and, in so doing, effectively reacquired the Home, although it is unclear precisely when this occurred.[12] Goldenberg's Plan did not disclose that he would be acquiring 18 Audubon Place LLC or that he would continue to reside in the Home. In fact, the Disclosure Statement and Plan provided that Goldenberg would be relinquishing the home to satisfy the secured indebtedness.

### C. Goldenberg failed to comply with all of the Plan provisions, and the Court dismissed the Goldenberg Bankruptcy.

---

[10] The Plan provides that this property was to be transferred by July 31, 2011 but the Order confirming the Plan modified this date to August 31, 2011.

[11] A certified copy of this Act of Sale filed in the conveyance records is attached hereto as *Exhibit D*.

[12] The Mortgage dated May 31, 2012 was executed by the Debtor through an agent other than Goldenberg. The Note dated May 15, 2015 was executed by the Debtor through Goldenberg its manager.

24.

Goldenberg failed to comply with the provisions of the Plan. The Bankruptcy Court ordered Goldenberg to take action to correct numerous deficiencies—payment of professional fees, filing of required reports, etc.—but he appears to have ignored the Court's order. *See* Order Following Conference, Oct. 31, 2016 [Doc. 597 in the Goldenberg Bankruptcy].

25.

Ultimately, the Court entered a Rule to Show Cause requiring that Goldenberg appear before the Court on December 1, 2016 and show cause why he failed to comply with the Court's order. The Court stated that "[f]ailure to appear may result in incarceration and/or dismissal of the case." *See* Order to Show Cause, Nov. 14, 2016 [Doc. 600 in the Goldenberg Bankruptcy]. Goldenberg failed to appear as ordered on December 1, 2016.

26.

By Order entered on December 3, 2016 [Doc. 604 in the Goldenberg Bankruptcy], the Bankruptcy Court dismissed Goldenberg's bankruptcy case with prejudice, provided that Goldenberg is not entitled to a discharge, and barred Goldenberg and his wife from filing a bankruptcy case for a period of five (5) years from the date of the order ("Goldenberg Dismissal Order").

27.

After six years of consuming the resources of the bankruptcy court, the Goldenberg Bankruptcy was dismissed, Mr. Goldenberg was denied a discharge and Mr. Goldenberg was prohibited from filing bankruptcy until December 4, 2021. Just before his first bankruptcy case was dismissed, the Home was back in foreclosure and remained in foreclosure from October

2016 until this bankruptcy case was filed in August of 2018. Despite the Goldenberg Dismissal Order, the Home is again back in bankruptcy, albeit now through Debtor, Mr. Goldenberg's limited liability company. Despite Goldenberg personally being prohibited from seeking further bankruptcy protection for a five year period, Goldenberg through Debtor, has managed again to obtain bankruptcy protection by placing title to the Home in a limited liability company that he owns and manages and placing that company into bankruptcy.

### D. Debtor's Filing in the Western District

28.

To make matters worse, Debtor appears to have improperly concocted venue in this District presumably to avoid the repercussions of having evaded the Goldenberg Dismissal Order. SBN is not requesting that this Court transfer venue at this time because it would lead to more delay. However, this Court should be aware of the facts regarding Debtor's actions in filing this case.

29.

As reflected by the Schedules, Debtor's only asset is in New Orleans, Debtor's principal is in New Orleans and Debtor's creditors are in New Orleans (except for SBN). Debtor's Initial Report, filed by Debtor on December 14, 2010 with the Louisiana Secretary of State, set forth a municipal address located in New Orleans. This same Initial Report provided that Debtor's initial member was domiciled in New Orleans;[13] Mr. Goldenberg, Debtor's 98% owner, and Robert Goldenberg, Debtor's 2% owner, are both domiciled in New Orleans;[14] Debtor's registered agent for service of process has at all times been located in New Orleans.

---

[13] *See Exhibit E*, Debtor's Corporate Documents on file with the La. Sec. of State, *in globo*.
[14] *See* List of Equity Security Holders [Doc. 1] at 27.

30.

On July 19, 2018, less than two weeks prior to Debtor filing bankruptcy in this Court, Debtor filed a Notice of Change with the Louisiana Secretary of State changing its municipal address and mailing address to 537 Cajundome Boulevard, Suite 111, Lafayette, Louisiana, 70506.[15]   Notably, Debtor's December 14, 2017 Annual Report filed with the Louisiana Secretary of State also sets forth New Orleans addresses for Debtor's mailing address, registered agent, and Debtor's sole member at that time, Richard Goldenberg.[16]

31.

The sign in front of 537 Cajundome Boulevard reads "Louisiana Immersive Technologies Enterprise."  No exterior signage reflects that Debtor offices in this building.  Lafayette Parish records indicate that the owner of 537 Cajundome Boulevard is Southwestern Louisiana Institute of Liberal & Technical Learning, University of Louisiana at Lafayette.[17]

32.

Debtor's schedules do not reflect that it owns 537 Cajundome Boulevard nor do the Debtor's schedules reflect that it leases 537 Cajundome Boulevard from the owner.  Further, Debtor's schedules do not reflect any other contractual arrangement with any party relating to this address.   Debtor appears to have changed or concocted its address specifically to file bankruptcy in this District rather than where the Home is located, its principal is located and most of its creditors are located.  Other than the mysterious 537 Cajundome Boulevard address, Debtor's filings do not show any other connection to this District.

### III.  <u>RELIEF SOUGHT</u>

#### A.  **Immediate Eviction of Occupier**

---

[15]     See ***Exhibit E***.
[16]     *Id.*
[17]     Lafayette Parish Assessor's Office Property Assessment no. 6131754 attached hereto as ***Exhibit F***.

33.

Incredibly, Goldenberg, Debtor's principal, continues to live in the Home. Debtor's own schedules reflect that Goldenberg owes $1,200,000.00 on the alleged lease by Debtor. **Debtor has allowed Mr. Goldenberg to continue to live in the Home without paying rent _for 4 years_.** Debtor has, of course, taken no steps to evict Mr. Goldenberg for nonpayment, because Mr. Goldenberg owns/controls Debtor. Mr. Goldenberg and Debtor have paid very little on the debt secured by the Home since **2009** and nothing since August of 2016. This must end immediately. Debtor has a fiduciary obligation to get Goldenberg out of the Home immediately. SBN requests that this Court put an end to Goldenberg's occupation of the Home now. How Goldenberg managed to remain in one of the most expensive homes in the state for nearly a decade without paying for it may make for a good novel. Now it is time for his occupation to end without any further delay. SBN requests that this Court order Goldenberg out of the Home within 10 days.

34.

In an attempt to avoid immediate eviction and protect Goldenberg's wrongful occupancy, the Debtor and Goldenberg purported to record a Lease of the Home to Goldenberg on July 31, 2018, the day before the Debtor filed bankruptcy. The Debtor recorded this lease to avoid the consequences of Louisiana law and Bankruptcy Code section 544. "An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located." LA. CIV. CODE art. 1839. "[A] rule ancillary to [this] general principle provides that no . . . surface lease . . . or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until it has been filed for registry in the office of the parish recorder of

the parish where the land or immovable is situated[.]" RONALD J. SCALISE, JR., *Third Persons and Registry*, 5 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 12.41 (2d. ed.) (citing LA. REV. STAT. § 9:2721). Under section 544(a)(3), any lease of the property would have to have been recorded to be enforceable in this case.

35.

The lease is invalid because it was filed after the Home was seized and without proper authority. The Seizure Order was entered on October 11, 2016 in the Foreclosure Proceeding and notice of the seizure was recorded in the Orleans Parish mortgage records on October 25, 2016. The Lease was not recorded until July 31, 2018. Under La. R.S. 13:3888, "[u]pon the sheriff's filing of the notice of seizure….no surface lease… or other instrument or writing relating to or purporting to affect immovable property that has not been filed previously for registry shall effectively create, transfer or encumber any interest in the immovable property under seizure." Accordingly, the Lease is not effective pursuant to La. R.S. 13:3888. In addition the Lease in invalid because it was not properly authorized. The Lease is signed by "Robert Tyler Goldenberg, Member." As set forth in its schedules, Robert Tyler Goldenberg is the 2% owner of the Debtor. The schedules reflect that Richard Goldenberg is the manager of the Debtor and the 98% owner of the Debtor. The Lease does not contain a resolution authorizing Robert Tyler Goldenberg to lease the Home. Louisiana law does not otherwise authorize Robert Tyler Goldenberg to execute a lease on behalf of the Debtor. Accordingly, the Lease is facially invalid.

36.

The Debtor's purported attempt to record the Lease of the Home to Goldenberg, who owes the Debtor $1,200,000 in rent according to its schedules, on the day before the Debtor filed

12

bankruptcy is outrageous. Even if the Lease were valid under state law (and it is not), the Lease is invalid for actual fraud and clearly avoidable as a fraudulent transfer under Bankruptcy Code § 548(a). In fact, the Debtor's estate has a claim against Robert Tyler Goldenberg for purporting to enter into the Lease.

37.

Since the lease is invalid, Goldenberg is trespassing and has no right of possession and/or occupation of the Home. Accordingly, SBN requests that this Court issue an order compelling Goldenberg to vacate the Home immediately.[18] *See In re Blaylock*, 301 B.R. 443, 450 (Bankr. E.D. Pa. 2003) (where the court found that the automatic stay was inapplicable to stop the eviction of a Chapter 7 debtor-squatter, stating that a bankruptcy case "offers no right to a debtor to remain in property for which she has neither a legal nor equitable interest"). *See also In re Radco Merchandising Svcs., Inc.*, 111 B.R. 684, 688-89 (N.D. Ill. 1990) (holding that the bankruptcy court had the power under Bankruptcy Code § 105 to issue an order directing the debtor and a third party to vacate a warehouse).

**B. Court Authority for SBN to File Sales Motion**

38.

SBN requests that this Court authorize SBN to file a motion to sell the Home. The Fifth Circuit has accorded derivative standing to creditors' committees to pursue claims on behalf of the estate where the claim is colorable, the debtor-in-possession has refused unjustifiably to pursue the claim, and the committee first receives leave to sue from the bankruptcy court. *In re Louisiana World Exposition*, 858 F. 2d 233, 246 (5th Cir. 1988). The Second Circuit in *In re*

---

[18]        *See* Bankruptcy Code § 105.

*Persky,* 893 F. 2d 15 (2d Cir. 1989) held that a secured creditor has standing to compel a sale where the trustee refuses to act to protect creditor interests.

39.

In this case, the Debtor's continued retention of the Home is a breach of the Debtor's duty to the estate. The Debtor has no prospect for reorganization and is simply using this proceeding to allow its principal to continue to occupy the Home for free. The Debtor has a duty to immediately sell the Home to avoid foreclosure or forced liquidation. A sales motion is not just colorable it is required by any business judgment standard. Second the Debtor clearly has refused to sell the Home as set forth above. To confirm this, SBN issued a letter to Debtor's counsel shortly prior to filing this motion to demand that the Debtor immediately sell the Home. Given the facts of this case, the Debtor has not, and cannot be trusted, to properly sell the Home. Third, by this motion, SBN seeks formal leave and authority to file and pursue the sales motion.

40.

SBN has satisfied each of the requirements for derivative standing set forth *In re Louisiana World Exposition* and *In re Persky.* Accordingly, SBN requests that this Court authorize SBN to file a motion to approve an expedited process to sell the Home under section 363.

41.

**C. In the Alternative, Termination of Exclusive Period for Cause**

Bankruptcy Code § 1121(b) provides the debtor a 120 day exclusivity period (the "Exclusivity Period") during which only the debtor may file a plan. However, after notice and a hearing, a court may reduce the Exclusivity Period for cause. Bankruptcy Code § 1121(d)(1).

14

42.

The Fifth Circuit has said that "any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121 . . . . Section 1121 was designed, and should be faithfully interpreted, t**o limit the delay that makes creditors the hostages of Chapter 11 debtors**." *In re Timbers of Innwood Forest Assoc.*, 808 F.2d 363, 372 (5th Cir. 1987) (emphasis added).

43.

Section 1121 "represents a congressional acknowledgement that creditors, whose money is invested in the enterprise no less than the debtor's, have a right to a say in the future of that enterprise." *In re Timbers of Innwood Forest Assoc.*, 808 F.2d 363, 372 (5th Cir. 1987). "These provisions were intended to provide the court with flexibility in individual cases, and to democratize the reorganization process." *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160 (Bankr. D. Maine 1982) (citations omitted).

44.

Delay by the debtor is one of the factors courts consider in determining whether cause exists to reduce the Exclusivity Period. *See, e.g.*, *In re Tex. Extrusion Corp.*, 68 B.R. 712, 725 (N.D. Tex. 1986). In *Matter of Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir. 1988), the Fifth Circuit affirmed the district court's ruling which shorted the Exclusivity Period and allowed a debtor to file a plan of reorganization only until the close of business that very day where the "major purpose" of the debtor's conduct was delay. *Id.* at 1160.

45.

Mr. Goldenberg has managed to successfully use the procedural rules of the state and federal courts to continuously delay both his personal eviction from, and the sale of, the Home. SBN wishes to avoid any further delay, and respectfully requests that this Court terminate the Exclusivity Period, for cause, and permit SBN to immediately submit a plan of reorganization so as to facilitate the expeditious marketing and sale of the Home and the satisfaction of Debtor's indebtedness to SBN as quickly as possible, and to avoid any further unnecessary costs and expenses, which continue to accrue.

46.

The purpose of a chapter 11 bankruptcy case is to "preserve a going concern," "salvage a viable business enterprise" and "maximize return for creditors." 7 *Collier on Bankruptcy*, ¶1112.04[5][a], 1112-25 (Alan M. Resnick & Henry J. Sommer, eds., 16th ed.). None of these purposes are possible in Debtor's case:

a. Debtor engages in no business activities;

b. Debtor generates no income;[19]

c. Debtor has no track record of running a business;

d. Debtor provides no goods or services of any kind;

e. Debtor has at all times operated at a loss, and there is no reason to think that this will change;

f. Debtor's single asset is a private residence that is occupied by Debtor's owner, Mr. Goldenberg, who has amazingly managed to live in the Home on one of the most

---

[19] Statement of Financial Affairs [Doc. 1], at 19.

exclusive streets in the Gulf South for years, apparently for free;

g. Debtor's continued occupation and ownership of the Home will invariably result in a continuing loss with no reasonable likelihood of reorganization;

h. Debtor has no business prospects to justify the continuance of any reorganization effort;

i. The prior conduct of Debtor's principal in the Goldenberg Bankruptcy demonstrates a track record evidencing an intent to delay and a flagrant disregard for the bankruptcy laws of the United States.

    a. Debtor's prior bankruptcy case was dismissed, with prejudice, by Order [Doc. 604 in the Goldenberg Bankruptcy] of the United States Bankruptcy Court for the Eastern District of Louisiana on December 1, 2016, pursuant to which Debtor's principal was barred from filling a bankruptcy case for a period of five years;

    b. The dismissal of the Goldenberg Bankruptcy was subsequent to the Bankruptcy Court's issuance of an order requiring Mr. Goldenberg to appear to show cause why he should not be sanctioned for failure to comply with the Court's prior orders and further providing that "[f]ailure to appear may result in incarceration and/or dismissal of the case." *See* Order to Show Cause [Doc. 600 in the Goldenberg Bankruptcy].

    c. Mr. Goldenberg, Debtor's principal, managed to somehow take ownership and control of Debtor so as to remain in the Home while defaulting on a new loan related to his ownership of the Home. Debtor's conduct in this regard has already resulted in the needless waste of an untold quantity of judicial resources and a 6-

year-long bankruptcy case that terminated in a dismissal; there is no justifiable reason to allow him to continue another.

47.

Additionally, consistent with Mr. Goldenberg's conduct in the now-dismissed Goldenberg Bankruptcy, Debtor's filing of its petition in this district appears to have been in bad faith. Debtor has represented to the Court that "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district."[20] However, to the best of SBN's knowledge, information, and belief, Debtor's assertion in this regard is inaccurate as explained above. [21] It was not until July 19, 2018, less than two weeks prior to the filing of

---

[20] Voluntary Pet. for Non-Individuals Filing for Bankruptcy [Doc. 1], at 3, Question no. 11.

[21] Whether or not a debtor's bankruptcy petition was properly filed in the correct venue is governed by 28 U.S.C. § 1408. *See In re Shorts Auto Parts of Warren, Inc*., 136 B.R. 30, 34 (Bankr. N.D.N.Y. 1991) ("Section 1408(1) of title 28 provides the guide for determining whether venue is proper in a given district."). "Subsection (1) of § 1408 requires that a debtor have a domicile or residence within the district for 180 days immediately preceding the filing of the petition or for a longer portion of the 180 day period than the domicile or residence of the debtor was located in any other district." *In re Frame*, 120 B.R. 718, 722 (Bankr. S.D.N.Y. 1990) (emphasis deleted). *See also Shorts Auto Parts*, 136 B.R. at 34 (stating that 28 U.S.C. § 1408(1) "permits proper venue in any district in which 'the domicile, residence, principal place of business . . . or principal assets . . . of the person or entity that is the subject of the case' have been located for the 180 days preceding the filing date of the petition or for a longer portion of the 180-day period than in another district."). This 180-day period immediately preceding the filing of the Petition is sometimes referred to as the "venue period." *See Frame*, 120 B.R. at 720 ("To determine whether venue in this district is proper, the relevant facts are those for the 180 day period preceding the filing of the Debtor's petition . . . (the 'Venue Period')."). Debtor filed its bankruptcy petition on August 1, 2018, making the venue period herein the period between February 2, 2018 and August 1, 2018 (the "Venue Period"). For the past 8 years, including for the vast majority of the Venue Period, Debtor's domicile, residence, principal place of business, and sole and principal asset has been located in the *Eastern* District of Louisiana: (i) Debtor's Initial Report, filed by Debtor on December 14, 2010 with the Louisiana Secretary of State, set forth a municipal address located in New Orleans; (ii) That same Initial Report provided that Debtor's initial member was domiciled in New Orleans; (iii) Mr. Goldenberg, Debtor's 98% owner, and Robert Goldenberg, Debtor's 2% owner, are both domiciled in New Orleans; (iv) The Home, Debtor's sole asset, is located in New Orleans; and (v) Debtor's registered agent for service of process has at all times been located in New Orleans. "If a debtor did not have a single place of domicile (or residence, as the case may be) throughout the relevant period, the court must look at all of the debtor's domiciles (or residences) and determine in which the Debtor was longer in order to determine whether venue is proper." *Frame*, 120 B.R. at 722; see also In re Deabel, Inc., 193 B.R. 739, 742 (Bankr. E.D. Pa. 1996) ("The Debtor's counsel conceded that, since the Debtor's change of its address from New Jersey to Philadelphia occurred less than 90 days prior to the Debtor's bankruptcy filing, this case was improperly venued in this district."). Thus, even assuming, arguendo, that Debtor's domicile changed on July 19, 2018, venue is still proper only in the Eastern District of

Debtor's Petition herein, that Debtor filed a Notice of Change with the Louisiana Secretary of State changing its municipal address and mailing address to 537 Cajundome Boulevard, Suite 111, Lafayette, Louisiana, 70506.[22]  Notably, Debtor's December 14, 2017 Annual Report filed with the Louisiana Secretary of State also sets forth New Orleans addresses for Debtor's mailing address, registered agent, and Debtor's sole member at that time, Richard Goldenberg.[23]

48.

SBN's primary concern is minimizing any further delay of the sale of the Home, which is why SBN is not seeking a transfer of venue at this time.[24]  However, SBN submits that Debtor's bad faith filing of this case in an improper venue constitutes further cause warranting the termination of the Exclusivity Period, because, as an equitable matter, the Debtor should not be permitted to obtain the protection of the bankruptcy laws that it openly disregards to the prejudice of its creditors.

49.

While "cause" is not specifically defined in Section 1121, the legislative history of this section reveals what may establish cause for purposes of reducing the Exclusivity Period.  *See In re Acceptance Ins. Companies, Inc.*, No. BK05-80059, 2008 WL 3992799, at *2 (Bankr. D. Neb. Aug. 20, 2008) (citing *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643-44 (B.A.P. 8th Cir. 2003))

---

Louisiana because Debtor spent the entirety of the Venue Period domiciled in New Orleans, whereas it spent only the two weeks immediately preceding its bankruptcy filing domiciled in Lafayette.

[22]       Debtor's Corporate Documents on file with the La. Sec. of State are attached *in globo* as ***Exhibit E***.
[23]       *Id.*
[24]       "If a debtor did not have a single place of domicile (or residence, as the case may be) throughout the relevant period, the court must look at all of the debtor's domiciles (or residences) and determine in which the Debtor was longer in order to determine whether venue is proper." *Frame*, 120 B.R. at 722; *see also In re Deabel, Inc.*, 193 B.R. 739, 742 (Bankr. E.D. Pa. 1996) ("The Debtor's counsel conceded that, since the Debtor's change of its address from New Jersey to Philadelphia occurred less than 90 days prior to the Debtor's bankruptcy filing, this case was improperly venued in this district.").  Thus, even assuming, *arguendo*, that Debtor's domicile changed on July 19, 2018, venue is still proper only in the Eastern District of Louisiana because Debtor spent the entirety of the Venue Period domiciled in New Orleans, whereas it spent only the two weeks immediately preceding its bankruptcy filing domiciled in Lafayette.

(setting forth factors).  These factors include:

(1) the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure;

- Here, Debtor is a single asset LLC with an exceedingly simple financial structure, which weighs in favor of termination/reduction of the Exclusivity Period.

(2) the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information;

- No creditors' committee has been appointed, and the only information necessary to the sale of the Home are appraisals and marketing information; this factor weighs in favor of termination/reduction of the Exclusivity Period.

(3) the existence of good faith progress towards reorganization;

- SBN respectfully submits that reorganization is not possible.  As set forth above, Debtor generates no revenue and is not a going concern. There is simply no business to reorganize, which weighs in favor of termination/reduction of the Exclusivity Period.

(4) the existence of an unresolved contingency;

- None, which weighs in favor of termination/reduction of the Exclusivity Period.

(5) the fact that the debtor is paying bills as they become due;

- As is evident from Debtor's schedules, Debtor has entirely failed to pay all bills as they become due, which weighs in favor of termination/reduction of the Exclusivity Period.

(6) the length of previous extensions of exclusivity;

- While there have been no prior extensions of exclusivity in this case, SBN submits that the years-long conduct of Debtor's principal in the Goldenberg Bankruptcy—a case involving the same individual and the same collateral property, which was ultimately dismissed, for cause— supports a finding that neither Debtor nor its principal are entitled to any further delays, which weighs in favor of termination/reduction of the Exclusivity Period.

(7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity

period would result in the debtor having an unfair bargaining position over creditors;

- Not applicable at this juncture.

(8) the debtor's failure to resolve fundamental reorganization matters essential to its survival;

- As set forth above, Debtor is incapable of reorganization. There exists no business, no accounts receivable, no goods or services provided by Debtor of any kind, no revenue generation, no history of success, and no prospects; this factor weighs in favor of termination/reduction of the Exclusivity Period.

(9) the gross mismanagement of the debtor.

- As set forth above, Debtor has entirely failed to meet any and all of its financial obligations and has allowed an occupier to remain in the Home for years for free, further justifying termination/reduction of the Exclusivity Period.

*In re Acceptance Ins. Companies, Inc.*, No. BK05-80059, 2008 WL 3992799, at *2 (Bankr. D. Neb. Aug. 20, 2008) (citing *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643-44 (B.A.P. 8th Cir. 2003)).

50.

For years, Debtor and its principal have taken advantage of the procedural rules of the state and federal courts of Louisiana to achieve delay after delay which have allowed Mr. Goldenberg to remain in the Home for free to the prejudice of his creditors and at great expense to the judicial system.

51.

Debtor's continued occupation of the Home will result in the continuing accrual of default interest, as well as the incursion of entirely unnecessary administrative costs and fees.

52.

Further, a high-end property prices in New Orleans are falling, not rising.[25]  Each day that the Home remains off the market increases the likelihood that the ultimate sale price of the Home will be lower, to SBN's prejudice.

53.

Because (1) Debtor filed this bankruptcy case for the sole purpose of delaying a foreclosure of the Home; (2) Debtor's continued ownership of the Home will result in a substantial and continuing loss to Debtor's estate; (3) there is no reasonable likelihood that Debtor will be capable of rehabilitation such that Debtor's business prospects justify continuance of the reorganization effort; (4) Debtor's principal has a demonstrable track regard of disregarding the bankruptcy laws of the United States; and (5) Debtor has filed this proceeding in this district in bad faith, SBN respectfully submits that cause exists for the termination of the Exclusivity Period so that SBN may immediately submit a plan calling for the marketing and sale of the Home.

**D.  <u>In the alternative, a trustee should be appointed.</u>**

54.

In the event that the Court declines to terminate the Exclusivity Period, SBN respectfully requests that a trustee be appointed pursuant to Section 1112(b) of the Bankruptcy Code.   SBN incorporates its allegations set forth above.

55.

The standards for appointment of a Chapter 11 trustee are set forth in 11 U.S.C. §

---

[25]     *See*, *e.g.*, R. Thompson, *Average New Orleans Home Sale Prices Fell in 2017 but Rose Elsewhere in Region*, Feb. 25, 2018, ADVOCATE.COM, https://www.theadvocate.com/new_orleans/news/business/article_f26a4540-18ed-11e8-ad4b-aff8ca1cb402.html.

1104(a), which provides:

(a) **At any time after the commencement of the case but before confirmation of a plan**, on request of a party in interest or the United States trustee, and after notice and a hearing, **the court shall order the appointment of a trustee**--

(1) **for cause**, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) **if such appointment is in the interests of creditors, any equity security holders**, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(Emphasis added).

56.

A debtor-in-possession owes fiduciary duties to the bankruptcy estate. *Smart World Techs., LLC v. Juno Online Servs., Inc.* (*In re Smart World Techs., LLC*), 423 F.3d 166, 175 (2d Cir.2005) (stating that a debtor-in-possession's "duty to wisely manage the estate's legal claims is implicit in the debtor's role as the estate's only fiduciary"); *In re Bowman*, 181 B.R. 836, 843 (Bankr.D.Md.1995). These obligations "include a duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *Bowman*, 181 B.R. at 843 (citing Daniel B. Bogart, Liability of Directors of Chapter 11 Debtors in Possession: "Don't Look Back–Something May Be Gaining on You", 68 Am. Bankr.L.J. 155, 216–27 (1994)). To fulfill its duty of loyalty, a debtor-in-possession must "avoid self-dealing, conflicts of interest and the appearance of impropriety." *Id.* "When a debtor-in-possession is incapable of performing [its statutory] duties, a Chapter 11 trustee may be appointed." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr.S.D.N.Y.1990). ). Numerous courts have held that conflicted management may warrant

the appointment of a Chapter 11 Trustee. *See e.g. In re Cajun Elec. Power Coop., Inc.*, 191 B.R. 659, 663 (M.D.La.1995) (appointing a chapter 11 trustee pursuant to § 1104(a)(2) because management held conflicts of interest); *In re Nautilus of N.M., Inc.*, 83 B.R. 784, 789–790 (Bankr.D.N.M.1988) (appointing a chapter 11 trustee under § 1104(a)(2) because management held conflicts of interest and "freely admitted he would protect his own interests first"); *In re L.S. Good & Co.*, 8 B.R. 312, 315 (Bankr.N.D.W.Va.1980) (appointment of a chapter 11 trustee pursuant to § 1104(a)(2) was warranted because there was no prospect of reorganization and because, under the facts of that case, "current management ... will be unable to make the impartial investigations and decisions demanded in evaluating and pursuing ... claims").

57.

As set forth hereinabove, SBN cannot fathom of a more clear case of mismanagement and conflicted management than the facts of this case. The Debtor has no income and is owed more than $1.2 million from Mr. Goldenberg who has been living rent free in the Home for a long period of time. Yet the day before the Debtor filed bankruptcy, the Debtor recorded the purported Lease of the Home to Mr. Goldenberg for four years! Meanwhile, the Debtor allowed the Home to be sold for taxes and continues to accrue debts to other creditors, including a school (the schedules do not reflect how the Debtor became indebted to a school). The Debtor has failed and refused to sell the Home which it cannot afford. The Debtor is shielding Mr. Goldenberg's continued wrongful occupation of the Home while allowing Mr. Goldenberg to continue to accrue debts in the name of the Debtor. These facts establishing the bad faith, conflicted management, and mismanagement of Debtor provide cause supporting SBN's request for a Chapter 11 Trustee.

58.

Furthermore, pursuant to Section 1104(a)(2), even without a finding of "cause," the bankruptcy court must appoint an independent trustee "if such appointment is in the interest of the creditors." In the event that the Court does not wish to terminate the Exclusivity Period, the appointment of an independent trustee is absolutely necessary to avoid the further incursion of unnecessary costs and delays and to preserve the value of the Home, SBN's collateral.

WHEREFORE, SBN V FNBC LLC prays that, after notice and hearing, for the entry of an order A) immediately evicting the persons improperly occupying its collateral; and B) to authorize SBN V FNBC LLC to move for an expedited Section 363 sales process, or alternatively termination of the period of exclusivity provided by 11 U.S.C. § 1121(b) for a debtor to file a plan of reorganization, or, in the alternative, for an order appointing a Chapter 11 trustee pursuant to 11 U.S.C. § 1104, for the reasons set forth herein.

Respectfully submitted,

CARVER, DARDEN, KORETZKY, TESSIER
FINN, BLOSSMAN & AREAUX, L.L.C.

/s/ David F. Waguespack
DAVID F. WAGUESPACK (#21121)
PETER J. SEGRIST (#35314)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone: (504) 585-3814
Fax: (504) 585-3801

*Counsel for SBN V FNBC LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been served by:

1. ELECTRONIC FILING through the Courts' Notice of Electronic Filing to the parties listed on the attached Exhibit "1" on August 14, 2018; and

2. U.S. Mail, postage prepaid, to the parties listed on the attached Exhibit "2" on August 14, 2018.


/s/ David F. Waguespack
DAVID F. WAGUESPACK

## Exhibit 1

Gail Bowen McCulloch on behalf of U.S. Trustee Office of U. S. Trustee
gail.mcculloch@usdoj.gov

Office of U. S. Trustee
USTPRegion05.SH.ECF@usdoj.gov

R. Patrick Vance on behalf of Creditor Daniel O. Conwill, IV
pvance@joneswalker.com

William C. Vidrine on behalf of Debtor 18 Audubon Place, LLC
williamv@vidrinelaw.com, dawn@vidrinelaw.com

David F. Waguespack on behalf of Creditor SBN V FNBC LLC
waguespack@carverdarden.com, plaisance@carverdarden.com

27

**Exhibit 2**

4841-4990-0656, v. 2

Label Matrix for local noticing
0536-4
Case 18-50960
Western District of Louisiana
Lafayette
Mon Aug 13 16:35:20 CDT 2018

18 Audubon Place, LLC
537 Cajundome Boulevard, Suite 111
Lafayette, LA 70506-4292

Louisiana Department of Revenue and Taxation
Attn:  Bankruptcy Division
P.O. Box 66658
Baton Rouge, LA 70896-6658

SBN V FNBC LLC
c/o David F. Waguespack
1100 Poydras Street
Suite 3100
New Orleans, LA 70163-1102

State of Louisiana, Department of Labor
Delinquent Accounts Unit,UI Tech Support
1001 North 23rd Street, Room 322
Baton Rouge, LA 70802-3338

U. S. Bankruptcy Court
214 Jefferson Street, Suite 100
Lafayette, LA 70501-7050

Audubon Place Commission
321 St. Charles Avenue
New Orleans, LA 70130-3145

Clerk of Court
Civil District Court
421 Loyola Ave. #402
New Orleans, LA 70112-1198

Daniel O. Conwill, IV
400 Poydras, Sutie 3100
New Orleans, LA 70130

Daniel O. Conwill, IV
c/o R. Patrick Vance
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100

Forstall Follies, LLC
Jonah Freedman Law, LlC
New Orleans, LA 70115

Jonah Freedman Law
5500 Prytania
New Orleans, LA 70115-4221

Mark Landry
433 Metairie Road, St. 600
Metairie, LA 70005-4328

Orleans Parish Assessor's Office
1300 Perdido St.
New Orleans, LA 70112-2118

Peter J. Segrist
Carver, Darden, Koretzky, et al
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163-1102

Richard Goldenberg
18 Audubon Place
New Orleans, LA 70118-5526

SBN V FNBC LLC
c/o Peter J. Segrist
1100 Poydras Street
Suite 3100
New Orleans, LA 70163-1102

SBN V FNBC, LLC
1700 Lincoln Street, Suite 2150
Denver, CO 80203-4500

TPG
9401 Airline Highway
New Orleans, LA 70118-1804

Trinity Episcopal School
Jackson Law Firm
825 Baronne St.
New Orleans, LA 70113-1102

Office of U. S. Trustee
300 Fannin St., Suite 3196
Shreveport, LA 71101-3122

William C. Vidrine
Vidrine & Vidrine
711 West Pinhook Road
Lafayette, LA 70503-2315

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)DIP

(u)Trinity Episcopal School
825 Baronne Street
New Orleans

(d)SBN V FNBC LLC
c/o David F. Waguespack
1100 Poydras Street
Suite 3100
New Orleans, LA 70163-1102

```
(d)Daniel O. Conwill IV              End of Label Matrix
c/o R. Patrick Vance                 Mailable recipients    21
Jones Walker LLP                     Bypassed recipients     4
201 St. Charles Avenue, 49th Floor   Total                  25
New Orleans, LA 70170-5100
```